1

2

3

4

5

6

7

8

9

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

10

11

12

13

14

15

16

| | | |
|---|---|---|
| SAFEWORKS, LLC, a Washington limited liability company, | | |
| Plaintiff, | | C08-1219Z |
| v. | | FINDINGS OF FACT AND CONCLUSIONS OF LAW |
| TEUPEN AMERICA, LLC, EXTREME ACCESS SOLUTIONS, INC., THE SPIDERLIFT COMPANY, INC., AND LEONARDO POLONSKI, | | |
| Defendants. | | |

17

## I.    **INTRODUCTION**

18

19

20

21

22

23

24

25

26

This matter came on for trial on May 10, 2010, before the Court, sitting without a

jury.  Plaintiff was represented by Stacie Foster and Steven Edmiston of Invicta Law Group.

Defendants were represented by Mark White and Katherine Lewis of White & Fudala, LLC.

At the conclusion of trial the Court took the matter under advisement.  The Court has now

considered the evidence presented at trial, the exhibits admitted into evidence, the parties'

FINDINGS OF FACT AND
CONCLUSIONS OF LAW - 1

1  briefs, and the arguments of counsel at trial.[1]  The Court being fully advised, now makes the

2  following Findings of Fact and Conclusions of Law:

3                                  **II.      FINDINGS OF FACT**

4  **A.      Jurisdiction**

5          1.      This Court has original jurisdiction under 15 U.S.C. § 1121 (claims arising

6  under the Lanham Act) and 28 U.S.C. § 1331.  The Court has supplemental jurisdiction over

7  the other claims joined for trial.

8          2.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b).

9          3.      Personal jurisdiction in this District is proper because defendants do business

10  throughout the United States and have submitted themselves to the jurisdiction of this Court.

11  **B.      Parties/Background**

12          4.      Plaintiff, SafeWorks, LLC ("SafeWorks") is a Washington limited liability

13  company based in Tukwila, Washington, with 24 offices throughout the United States, as

14  well as offices in Canada, the United Arab Emirates, and Belgium.

15          5.      SafeWorks is the registered owner of U.S. Trademark Registration Nos.

16  696,387 (SPIDER); 2,406,766 (SPIDER); 2,438,034 (SPIDER LINE); 577,536 (SPIDER

17  STAGING); 1,239,947 (SPIDER); 1,385,728 (SPIDER design); 696,385 (design trademark);

18  and 1,398,243 (design trademark).  The first of these Marks was registered with the U.S.

19  Patent and Trademark Office ("USPTO") in 1953.

20          6.      SafeWorks' Spider division has manufactured, sold and rented lifting, hoisting,

21  safety and access equipment for the construction, mining and maintenance industries, since

22  1947.

23          7.      SafeWorks' Spider division provides all types of equipment to raise and lower

24  both workers and materials above and below the ground.  See Exhibit 9.

25  _____

26  [1] The Court also received and considered a supplemental post-trial brief from the defendants addressing questions raised by the Court during closing arguments.  Docket no. 94.

FINDINGS OF FACT AND
CONCLUSIONS OF LAW - 2

8.      Defendant Teupen America, LLC is a Massachusetts limited liability company, with headquarters at 14 Chapin Avenue in Reading, Massachusetts.  Teupen America was previously known as "American Spider Lifts, LLC," but changed its name to "Teupen America, LLC" on April 25, 2005.  On April 17, 2008, Teupen America announced a name change to "The Spider Lift Company" but never operated using that name.  Instead, a new corporation was formed called "Extreme Access Solutions, Inc."

9.      Defendant Extreme Access Solutions, Inc. ("Extreme Access") is a Massachusetts Corporation, with headquarters at 14 Chapin Avenue in Reading, Massachusetts.  Extreme Access is a sister company of Teupen America and has continuing business dealings with Teupen America.  When Extreme Access was incorporated in 2007, Teupen America, LLC ceased selling aerial work platforms manufactured by Teupen Maschinenbau GmbH.  Extreme Access then took over the sale and rental of these products in the United States.

10.     Defendant The Spiderlift Company, Inc., is a Massachusetts corporation.

11.     At all times material, Leonardo Polonski was the President of defendant corporations.

12.     Defendants sell and rent track mounted aerial lifts manufactured by Teupen Maschinenbau GmbH, under a distributorship agreement between defendants and Teupen Maschinenbau GmbH first dated November 2003 and modified in 2008.  The distributorship agreement was again modified in 2009, between the parties Extreme Access Solutions, Inc. and Teupen USA, Inc.  A picture or rendition of defendants' product is shown on Exhibit 49.

13.     Defendants have used the term "spiderlift" to rent and sell their track mounted aerial lift machinery in the United States.

14.     In approximately 2004, defendants began using the term "spiderlift," and the domain name "www.spiderlifts.com" to promote and sell track mounted aerial lifts.

FINDINGS OF FACT AND
CONCLUSIONS OF LAW - 3

"Spiderlifts" are distinguished from other types of lifts by their articulated outriggers which allow the device to be leveled on different grades, their ability to rotate into a compact position to allow access through doors and gates as narrow as 30 inches, and the fact that they are self propelled.

15.     At all times relevant to this proceeding, one or more of the corporate defendants was the registered owner of the website and domain name "www.spiderlifts.com."

16.     Defendant Leonardo Polonski filed U.S. trademark application, serial number 77150147, for the Mark "American SpiderLifts," on April 5, 2007.  <u>See</u> Exhibit 42.  On February 1, 2008, defendant abandoned this trademark application.  <u>See</u> Exhibit 46.

17.     Defendant Extreme Access filed a trademark application, for "The SpiderLift Company," on April 17, 2008.  <u>See</u> Exhibit 43.  Extreme Access has applied for and received two extensions of time in which to file their statement of use for the Mark.  In its trademark application, defendant's attorney, Mark P. White, declared under penalty of perjury that the applicant believed it was entitled to use the Mark in commerce and that no other person or corporation had the right to use the Mark in commerce.  <u>See</u> <u>id.</u>  In this litigation defendants contend the term "spiderlift" is a generic term.  Generic terms are not suitable for trademark protection.

18.     On or about August 1, 2008, defendants filed an action for declaratory judgment in the U.S. District Court for the Eastern District of Massachusetts, asking that court to rule that SafeWorks be enjoined from bringing trademark litigation against them for their use of the term "spiderlift" and for a determination that the term was generic. Thereafter, SafeWorks later filed this action in this District.  The Massachusetts case was later transferred to this District.  Both cases were consolidated into this case no. C08-1219Z by Minute Order dated January 13, 2009.  <u>See</u> docket no. 29.

FINDINGS OF FACT AND
CONCLUSIONS OF LAW - 4

1   **C.      Products and Competition of the Parties**

2         19.      SafeWorks' Spider products sold under and/or bearing the SPIDER® Marks

3   have become well known in the construction, restoration, and maintenance industries as

4   products of the highest quality that originate with SafeWorks.

5         20.      SafeWorks' SPIDER® Marks, registered since 1953, are incontestable, and

6   commercially and conceptually strong and distinctive with regard to lifting, hoisting, safety

7   and suspended access equipment.  SafeWorks' SPIDER® Marks are suggestive when applied

8   to SafeWorks' products.  These Marks are contained in Exhibits 1-8.  These Marks include

9   Spider Staging Marks and Logo Marks which SafeWorks does not allege have been infringed

10  in this case.  SafeWorks contends in this lawsuit that defendants' infringe its Spider Marks

11  which are shown on Exhibits 3 and 4.  However, the phrase "SafeWorks spider products" as

12  used in these Findings of Fact and Conclusions of Law refer to all of the SafeWorks

13  products.

14        21.      SafeWorks carefully guards its intellectual property rights around the world.

15  See Exhibit 22 (cease and desist letter to Teupen Maschinenbau GmbH); Exhibit 27 (letter to

16  Man and Material Lift Engineering); Exhibit 29 (letter to Tracked Lifts); Exhibit 31 (letter to

17  Platform Basket); Exhibit 32 (letter to Omme Lift).

18        22.      At all times material, the term "spider," as used in the relevant aerial work

19  platform industry, refers to and is commonly known to describe SafeWorks' brands and

20  products as shown and described on their website.  See Exhibit 9.  SafeWorks' spider

21  equipment can be used to lift and lower people and materials along the vertical surface of a

22  building using cables and a powered suspended scaffolding.

23        23.      Fifty percent (50%) of SafeWorks' spider revenues are generated from the sale

24  of its products using its retail stores.  The spider products sell for prices ranging from

25  $24,000 to as high as $250,000.  SafeWorks also generates about 50% of its revenues from

26  the rental of its spider products.  The average rental cost for a spider product is

FINDINGS OF FACT AND
CONCLUSIONS OF LAW - 5

approximately $1,300 per month including accessories.  Most rentals of spider equipment are by construction foremen or job superintendents.

24.     SafeWorks has incurred expenses to brand, promote and market its products in the approximate amount of $48 million dollars during the period fiscal year 2000 through the present time.  See Exhibit 17.

25.     SafeWorks uses the internet, its retail sales offices and word of mouth to promote its business using the SPIDER® trademark.

26.     Defendant Extreme Access Solutions, Inc. presently sells and rents its Teupen "spiderlift" aerial lift platform products to customers in the construction, maintenance, and landscaping industries.  The corporate defendants have sold and rented their products to end users for purposes of lifting and lowering people and materials.  Defendants' products are also used for cleaning and maintenance, glass and glazing work, painting and masonry restoration and other related work in the construction industry.

27.     Extreme Access sells its aerial lift platforms for prices ranging from $63,000 to as high as $250,000.  Defendants often require 2-4 years to complete a product sale because of the substantial cost of the product.  During 2007, defendants sold 59 of their products.  Defendants rent their products for $1,980 per day with an operator, or $1,680 per day without an operator.

28.     Defendants admitted under oath that they market their product to SafeWorks' potential customers by advertising that defendants' product is "up to three times faster and less expensive than scaffolding or staging."  See Exhibit 103, Response 26, [Ex. A].

29.     SafeWorks' spider products directly compete with the defendants' "spiderlift" products in the aerial work platform industry for access and moving of people and materials.  The parties' products directly compete for work for cleaning and maintenance, glass and glazing, painting and masonry restoration and other related work in the construction industry.

FINDINGS OF FACT AND
CONCLUSIONS OF LAW - 6

30.     Extreme Access's competitors include Reachmaster, Omme, Italmec USA, Nifty Lift, and other foreign manufactures of track mounted aerial lifts.  None of these competitors use the term "spiderlift" in the United States.

31.     The only domestic manufacturer of aerial lifts similar to defendants' is Man and Material Lift Engineering, Inc., which agreed to SafeWorks' demand that it stop using the term "spiderlift" on its website and the use of the term "spider" in connection with the marketing and sale of its products.  See Exhibit 28 (letter agreement dated August 20, 2009).

32.     Defendants' expert witness, Guy Ramsey, testified that it was his opinion that the term "spiderlift" is a generic term used around the world and in the United States to refer to aerial work platforms with outrigger legs that look visually similar to a spider.  But the articles and references to "spiderlifts" identified by Mr. Ramsey in support of his opinion came primarily from the defendants, or companies that have since agreed with SafeWorks not to use the term "spiderlift" in the United States.

33.     At all times material, the terms "spider" and "spiderlift" have not been used to describe the type of product sold or leased by defendants.  The most common words to describe defendants' products are "track mounted boom," "track mounted articulating boom," or "track mounted articulating boom platform with outriggers" or similar word combinations referring to the propulsion system, base configuration and type of lift structure of the defendants' Teupen "spiderlift" product.  See Gooding Report, Exhibit 73.  Mr. Ryan Polonski, an owner and officer of Extreme Access, testified that he has referred to the Teupen "spiderlift" product defendant Extreme Access sells and rents as an "aerial work platform" and in his opinion it is unnecessary to describe defendants' products as "spiderlifts."  Defendant Leonardo Polonski referred to his companies' product as a "self propelled aerial lift platform with outriggers."  Defendants' product may also be referred to as an "aerial lift," aerial boom lift" and "articulated boom lift."  See Exhibit 103, Requests 28, 29, and 32.

FINDINGS OF FACT AND
CONCLUSIONS OF LAW - 7

**D.     Other Competition**

34.     The product that defendants now call a "spiderlift" was introduced in the United States in 1996 by E. Falck-Schmidt A/S, the Danish creator of the machine, under the name "Reachmaster."

35.     Reachmaster (the North American subsidiary of Falck-Schmidt) did not, and has not used the term "spiderlift" in the United States.

36.     In 2004, Reachmaster and SafeWorks entered into an agreement to respect one another's trademarks: Reachmaster would use the "spider" Mark in Europe, SafeWorks would use it in the United States, and neither would seek registration in the others' territory. See Exhibit 20.

37.     In 2010, defendants entered into a letter agreement with Reachmaster, under which Reachmaster agreed to provide funding for this litigation in exchange for defendants' promise that in the event defendants prevail, Reachmaster would not be prevented from using the term "SPIDERLIFT" in the United States, among other promises.  See Exhibit 113.

38.     Defendants entered into the agreement with Reachmaster in 2010 notwithstanding defendants' actual knowledge that Reachmaster had promised SafeWorks in 2004 that Reachmaster would not use the term "Spider" in the United States.[2]

39.     Teupen USA, Teupen Maschinenbau GmbH's direct distributor of the Teupen lift, based in North Carolina, does not use the term "spiderlift" on its website or marketing materials.  Safe Access, the West Coast distributor of Teupen lifts, also does not use the term "spiderlift."

---

[2] Defendants knew of Reachmaster's agreement with SafeWorks (Exhibit 20) because SafeWorks produced the agreement in 2009, during discovery in this matter.

40.     Other European manufacturers of track-mounted aerial lifts, including Omme, Italmec, NiftyLift, and Basket, do not use the term "spiderlift" in the United States to market or sell their products.

41.     Steve Gooding testified that the word "spiderlift" is not used by Teupen USA on its website to describe its own product.  Instead, the products are named "LEO," and the website uses industry-generic words and phrases such as "lifts," "access platforms," and "self-propelled telescopic access platform" to describe the products.  The outrigger legs are not referred to as "spiders" or "spider like" - they are referred to as "outriggers."  See Exhibit 75.

42.     The Court finds that "Spider" and "spiderlift" are not generic terms in the broadly defined construction, maintenance, and repair industries in the United States.

**E.     Likelihood of Confusion Factors**

43.     SafeWorks' SPIDER® Marks are commercially very strong and distinctive with regard to lifting, hoisting, safety and suspended access equipment, and are an important and valuable business asset of SafeWorks.  Regarding the strength of the Marks, the Court finds the SPIDER® Marks to be suggestive and incontestable.  The Marks' strength in the marketplace is amply supported by Spider's long use of the Marks, the Marks' promotion through advertising, trade shows, promotional incentives, and use throughout SafeWorks' national network of retail and rental offices.

44.     SafeWorks' spider products and the defendants' aerial lift products are complimentary in that they can be used for the same use and they are sold and rented to the same types of customers in the aerial work platform industry.

45.     SafeWorks markets its SPIDER® products via the internet and through its retail outlets.  Defendants also use the internet, advertising and demonstrations to market their product.  Defendants admit that the advertisement attached as Exhibit A to Request for Admission No. 26 "is an attempt to directly market to plaintiff's potential customers."  See

FINDINGS OF FACT AND
CONCLUSIONS OF LAW - 9

1   Exhibit 103, Request No. 26.  The majority of the photos on Extreme Access' website show

2   its product engaged in tasks that place it in direct competition with SafeWorks' products, and

3   is further evidence that defendants intend to compete with SafeWorks' products.  The parties

4   use some of the same and some different channels to market their products.

5          46.    The SPIDER® Marks and the defendants' "spiderlift" Mark are virtually

6   identical in sight, sound and pronunciation, and meaning.  The parties' trademarks are

7   identical except with respect to defendants' addition of the word "lift."  SafeWorks and

8   defendants' domain names are similar.  The domain name spiderlifts.com is registered to

9   defendants.  The domain name incorporates SafeWorks' registered trademark "Spider."

10         47.    SafeWorks presented the testimony of Elizabeth Callahan concerning the

11  company's plans to expand plaintiff's product lines.  The Court finds there is no concrete

12  evidence of expansion into new markets or that SafeWorks will develop the type of track

13  mounted aerial lifts sold by defendants.

14         48.    The Court finds that both parties sell and lease expensive products to buyers

15  who will exercise care in making a decision to buy or rent these products.

16         49.    In 2004, SafeWorks sent defendant Polonski, as manager of American Spider

17  Lifts, LLC, a cease and desist letter advising him of SafeWorks' registered trademarks and

18  demanding that American Spiderlifts, LLC cease and desist using the term "spider."  See

19  Exhibit 57.  After several e-mail exchanges, defendant Polonski agreed to change the

20  corporate name "American Spider Lifts" and to remove and stop using the "spider" Mark.

21  The parties did not reach agreement with respect to the continued use of the term "spider" in

22  the defendants' domain name www.spiderlifts.com.  See Exhibit 63.

23         50.    In May 2008, SafeWorks sent a second cease and desist letter to defendant

24  Polonski as President of Teupen America, demanding that Teupen America cease and desist

25  all infringing use of SafeWorks' SPIDER® Marks.  See Exhibit 67.  As a result, by letter

26  from defendant Teupen America's attorney, Mark P. White, dated May 29, 2008, defendant

FINDINGS OF FACT AND
CONCLUSIONS OF LAW - 10

agreed to all of the terms and conditions of the May 29, 2008 letter and agreed to cease and desist all use of the term "spider" "in connection with boom lifts or other products promoted to the building and construction industries" and to abandon use of the SPIDER® Mark in the company name and domain name.  <u>See</u> letter Exhibit 68.  Defendant Polonski authorized attorney White to send the letter and understood and agreed to the terms of the White letter.  <u>See</u> Leonardo Polonski deposition, September 9, 2009, pages 218-221.  ("So this is an agreement").

51.     Defendants used the SPIDER® Mark since August 2004 to infringe SafeWorks' Marks.

52.     Defendants continue to market, advertise and sell products using the infringing "spiderlift" Mark notwithstanding their constructive and actual knowledge of SafeWorks' superior trademark rights.

53.     There were three instances of actual customer confusion during the relevant period.  Ms. Callahan testified that one of defendants' customers called the SafeWorks store in Las Vegas seeking repair services for one of defendants' products.  Defendants Leonardo Polonski and Ryan Polonski also testified about two other instances where customers called defendants' office seeking repair information about SafeWorks' products.

54.     SafeWorks has suffered and is likely to continue to suffer irreparable injury to its reputation and goodwill by defendants' infringing use of its Marks.

55.     Defendants intentionally infringed SafeWorks' SPIDER® Mark.

56.     Defendants' infringement was willful, knowing and deliberate.

**F.     Damages**

57.     Defendants had net sales, costs of goods sold and gross profit as shown on the Kipper Report, Ex. 95 [Ex. 1] for the period 2004 - 2008, as follows:

| | |
|---|---|
| Net Sales | $16,521,893 |
| Less costs of goods sold | $13,678,409 |
| Gross Profit | $ 2,843,484 |

58.    Defendants had expenses and net profits associated with their sale of the infringing products, as shown by the Schedule C to the tax returns of Leonardo Polonski, Exhibit 117, for the same period 2004 - 2008, as follows:

| Period | Total Expenses | Net Profit |
|---|---|---|
| 2004   [last 5 months] | 324,557 | <201> |
| 2005 | 207,223 | <28,238> |
| 2006 | 480,251 | 139,667 |
| 2007 | 1,080,978 | 152,388 |
| 2008 | 1,038,079 | <236,734> |
| **Totals** | **3,131,088** | **26,882** |

59.    Mr. Kipper also testified that defendants had a gross profit for the first five months of 2009 of $346,738.  Plaintiff's expert witness was not provided additional financial records for the year 2009.  Ryan Polonski testified Extreme Access had total net sales of between $2,800,000 and $3,000,000 for the year 2009.  He testified that after expenses attributable to the sale of the products, the company had a net profit of approximately $30,000.  The Court finds that Extreme Access had net profits in 2009 of $**30,000**.  See Louis Vuitton S.A. v. Spencer Handbags Corp., 765 F.2d 966 (2d Cir. 1985) (holding that a Court may rely on the defendants' own statements to calculate profits).

### III.    CONCLUSIONS OF LAW

**A.    Infringement Claims: Violation of 15 U.S.C. § 1114 and 15 U.S.C. § 1125(a)**

1.    To prevail on its trademark infringement, unfair competition, false advertising and false designation of origin claims under the Lanham Act, (collectively the "infringement claims"), SafeWorks must prove the existence of a valid trademark and subsequent use by

FINDINGS OF FACT AND
CONCLUSIONS OF LAW - 12

another in a manner likely to create confusion.  <u>Comedy III Productions, Inc., v. New Line</u>

<u>Cinema</u>, 200 F.3d 593, 594 (9th Cir. 2000).

2.    Defendants contend in this litigation that the SafeWorks' SPIDER® Marks are

generic.  The legal standard for determining whether a mark is generic is known as the

primary significance test.  <u>Filipino Yellow Pages, Inc. v. Asian Journal Publn's, Inc.</u>, 198

F.3d 1143, 1147 (9th Cir. 1999).  If the primary significance of a particular term is the

product itself and not the producer, then the term is generic.  <u>Id.</u>  A generic term is not

protectable under trademark law because it is the "name of the product or service itself" and

"the very antithesis of a mark."  <u>J. Thomas McCarthy, Trademarks and Unfair Competition</u>,

§ 12:1 at 12-4 (4th Ed. 1997).

3.    Registered marks are endowed with a strong presumption of validity.  <u>Reno Air</u>

<u>Racing Ass'n, Inc. v. Jerry McCord</u>, 452 F.3d 1126, 1135 (9th Cir. 2006).  The general

presumption of validity resulting from federal registration includes the specific presumption

that the trademark is not generic.  <u>Coco-Cola Co. v. Overland, Inc.</u>, 692 F.2d 1250, 1254 (9th

Cir. 1982).  Therefore "[i]n cases involving properly registered marks, a presumption of

validity places the burden of proving genericness upon the defendant."  <u>Filipino Yellow</u>

<u>Pages, Inc.</u>, 198 F.3d at 1147.

4.    A defendant has the burden of showing genericness by a preponderance of the

evidence.  <u>Reno Air</u>, 452 F.3d at 1135.

5.    By obtaining an approved federal trademark application, defendants have made

clearly inconsistent statements to the USPTO and to this Court: on the one hand, that the

Mark SPIDERLIFT is distinctive and entitled to federal registration with the USPTO; and on

the other hand, that the Mark SPIDERLIFT is generic and therefore not protectable or

registrable under any circumstances.[3]

---

[3]The Court declines to apply the doctrine of judicial estoppel to preclude the defendants from raising
genericism as a defense to trademark infringement.  However, the Court does conclude that the

FINDINGS OF FACT AND
CONCLUSIONS OF LAW - 13

6.      Defendants' defense that the term "spiderlift" is generic fails because they have

represented otherwise to the USPTO, and because they have presented insufficient evidence

to show that the SPIDER® Mark is or has become generic.

7.      The test for likelihood of confusion is whether "a reasonably prudent consumer

in the marketplace is likely to be confused as to the origin of the good or service bearing one

of the marks." Surfvivor Media Inc., v. Survivor Prods, 406 F.3d 625, 630 (9th Cir. 2005).

As noted by the Court in SafeWorks, LLC v. Spydercrane.com, LLC, C08-0922JPD:

> The "likelihood of confusion" requirement directly advances the dual purposes
> of infringement law: "ensuring that owners of trademarks can benefit from the
> goodwill associated with their marks and that consumers can distinguish among
> competing producers." Thane Int'l v. Trek Bicycle Corp., 305 F.3d 894, 901
> (9th Cir. 2002). The question of whether an alleged trademark infringer's use
> of a mark creates a likelihood of confusion among the consuming public is the
> "core element" of trademark infringement law. Id.

8.      When evaluating the likelihood of confusion, the Ninth Circuit uses an 8-factor

test. AMF, Inc. v. Sleekcraft Boats, 599 F.2d 341, 348-49 (9th Cir. 1979). The Sleekcraft

factors include: (1) strength of the mark; (2) proximity of the goods; (3) similarity of the

marks and names: (4) evidence of actual confusion; (5) marketing channels used; (6) type of

goods and the degree of care likely to be exercised by the purchaser; (7) the defendant's

intent in selecting the mark; and (8) likelihood of expansion of product lines. Id.  In applying

the Sleekcraft analysis, the "factors should not be rigidly weighed" and the Court should "not

count beans." Dreamwerks Prod. Group, Inc. v. SKG Studio dba DreamWorks SKG, 142

F.3d 1127, 1129 (9th Cir. 1998).  "The test is a fluid one and the plaintiff need not satisfy

every factor, provided that strong showings are made with respect to some of them."

Surfvivor Media, Inc. v. Survivor Prods., 406 F.3d 625, 631 (9th Cir. 2005).

---

defendants' inconsistent representations to the USPTO and this Court are probative of whether
defendants believe the SPIDER® Mark is generic when used in reference to the defendants'
"spiderlift" products.

FINDINGS OF FACT AND
CONCLUSIONS OF LAW - 14

1        **a.**    **Proximity of the Goods:** Both parties' products are used for lifting and

2        lowering personnel and materials in the construction industry and the

3        post-construction maintenance industries, including window washing,

4        painting, masonry contracting, and general building repair.  The goods

5        are directly competitive, as shown by defendants' own website and

6        advertising, and the testimony of SafeWorks' expert Steve Gooding.

7        But SafeWorks' Spider products are best described as hoists and are

8        dissimilar in use and function to the defendants' track mounted aerial

9        lifts.  On balance this factor is neutral.

10        **b.**    **Strength of the Mark:** The Court must consider both conceptual and

11        commercial strength.  <u>GOTO.com v. Walt Disney Co.</u>, 202 F.3d 1199,

12        1207 (9th Cir. 2000).  The Court has found that The SafeWorks' Spider

13        Marks are suggestive.  "A suggestive mark conveys an impression of a

14        good but requires the exercise of some imagination and perception to

15        reach a conclusion as to the product's nature.  <u>Brookfield Commc'ns,</u>

16        <u>Inc. v. West Coast Entm't Corp.</u>, 174 F.3d 1036, 1058 n.19 (9th Cir.

17        1999).  Identifying the SafeWorks Marks as suggestive is only the first

18        step in the inquiry.  The Court must then determine the strength of the

19        SafeWorks' Marks in the market place.  <u>One Indust. LLC v. Jim O'Neal</u>

20        <u>Distrib., Inc.</u>, 578 F.3d 1154, 1164 (9th Cir. 2009).  The evidence at trial

21        demonstrated that SafeWorks and the defendants compete in the same

22        market, and that the parties' separate products are marketed to similar

23        customers for the performance of similar tasks.  <u>C.f.</u> <u>SafeWorks, LLC v.</u>

24        <u>Spydercrane.com, LLC</u>, C08-0922JPD.  Where similar marks compete

25        in the same market, the likelihood of consumer confusion increases.

26        Given that SafeWorks' SPIDER® Marks are strong and incontestable,

nearly 64 years old, and supported by a strong and ongoing marketing program, the Court concludes the SafeWorks' SPIDER® Marks are strong and entitled to protection.  This factor favors a finding of likelihood of confusion.

**c.**    **Marketing Channels used:** Both parties rely on the Internet for advertising and marketing.  Both parties also sell and rent to the same class of customers.  Their domain names are similar.  This factor supports a likelihood of confusion.

**d.**    **Defendants' Intent:** The Court concludes that defendants should have known of SafeWorks' trademark prior to using the "spiderlift" term.  In addition, after defendants were twice warned to stop using the term, and then agreed to cease using the term, defendants continued to use the Mark.  This factor favors a finding of likelihood of confusion.

**e.**    **Actual Confusion:** Evidence that use of a mark or name has already caused actual confusion as to the source of a product is "persuasive proof that future confusion is likely."  Sleekcraft Boats, 599 F.2d at 352. There have been at least three incidents of actual confusion.  Because proving actual confusion is so difficult, the lack of other evidence of actual confusion is not significant.  Id. at 352.  This factor weighs strongly in favor of a finding of likelihood of confusion.

**f.**    **Similarity of the Marks:** Once the descriptive term "lift" is removed from the comparison, the Marks are identical.  Further, the Marks are identical in meaning, because both the term "spiderlift" and SafeWorks' SPIDER® Marks are intended to invoke an association with the agility of the spider insect, traversing heights at various angles.  Since the term "spiderlift" is essentially identical in sight, sound, and meaning to

SafeWorks' SPIDER® Marks, the similarity of the Marks factor weighs strongly in favor of SafeWorks.

    **g.**    **Likelihood of Expansion:** SafeWorks presented some testimony of its plans to expand.  The Court concludes the evidence was speculation and this factor is neutral.

    **h.**    **Type of Goods and Degree of Care Exercised by Purchaser:** Both SafeWorks and defendants' products are expensive, and sold to sophisticated consumers who are usually well informed about their products.  This factor is neutral.

9.    SafeWorks has demonstrated that it has a valid and senior SPIDER® Mark (Exhibits 3, 4).  Application of the <u>Sleekcraft</u> factors demonstrates that there is a likelihood of confusion between SafeWorks' SPIDER® Marks and defendants' use of the term "spiderlift" based on the similarity of the terms, the strength of the SPIDER® Marks, the defendants' intent to infringe, the overlap of customers and channels of trade, and incidents of actual confusion.  <u>See</u> <u>Brookfield Commc'ns, Inc. v. West Coast Entm't Corp.</u>, 174 F.3d 1046-47 (9th Cir. 1999).  <u>Than Int'l, Inc., v. Trek Bicycle Corp.</u>, 305 F.3d 894, 900 (9th Cir. 2002).

10.    The Court concludes that SafeWorks is entitled to recover judgment on its infringement claims: (1) Lanham Act trademark infringement under 15 U.S.C. § 1114; and (2) false designation of origin, false advertising and unfair competition under 15 U.S.C. § 1125(a) against defendants Extreme Access Solutions, Teupen America, LLC and The Spiderlift Company.

**B.**    **Violation of Washington Consumer Protection Act**

11.    To prevail on its CPA claim, SafeWorks must show: (1) an unfair or deceptive act or practice, (2) occurring in trade or commerce, (3) affecting public interest, (4) injury in the plaintiff's business or property, and (5) a causal link between the unfair acts and injury

1    suffered.  <u>Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.</u>, 105 Wn.2d 778,

2    780, 719 P.2d 531 (1986).

3        12.    Absent unusual circumstances, the analysis of a CPA claim will follow that of

4    the trademark infringement and unfair competition claims; it will turn on the likelihood of

5    confusion regarding a protectable mark.  <u>See</u> <u>Seattle Endeavors v. Maestro</u>, 123 Wn.2d 339,

6    350, 668 P.2d 120 (1994).  The elements necessary to establish a likelihood of confusion for

7    common law and statutory unfair competition claims in Washington are the same as for

8    federal trademark infringement and unfair competition.  <u>eAcceleration Corp. v. Trend Micro,</u>

9    <u>Inc.</u>, 408 F.Supp.2d 1110, 1114 (W.D. Wash. 2006).

10        13.    SafeWorks has not shown any actual damages.

11        14.    SafeWorks has failed to prove its claim under the CPA.  The Court dismisses

12    this claim against all defendants.

13    **C.    Breach of Contract**

14        15.    SafeWorks has presented evidence of two possible contracts.  The 2004-5

15    alleged agreement was indefinite as to time and certain issues were not agreed upon.

16    SafeWorks has failed to establish a breach of this agreement.  The 2008 agreement identified

17    the parties, the subject matter, the promises, the terms and conditions, and the consideration.

18    <u>See</u> Exhibit 67 and 68.  Defendant Teupen America, LLC breached that agreement.

19    SafeWorks has failed to provide evidence, with any degree of specificity, as to the amount of

20    money SafeWorks may expend in corrective measures to counter the harm caused by

21    defendant's breach of contract.

22        In addition, SafeWorks has not established any actual damages arising from its breach

23    of contract claim.  SafeWorks is not entitled to recover on any breach of contract claim.

24    <u>Jacob's Meadow Owners Assoc. v. Plateau 44 II, LLC</u>, 139 Wn. App. 743, 754, 162 P.3d

25    1153 (2007) ("A breach of contract claim may be dismissed when there is no evidence of

26    damages caused by the breach.").

**D.      Individual Liability and Claims for Tortious Interference and Conspiracy**

16.      SafeWorks has failed to establish by a preponderance of the evidence that defendant Polonski has intentionally used the corporate form to violate and evade a duty owed to plaintiff.  SafeWorks is not entitled to recover damages personally against defendant Leonardo Polonski.

17.      Plaintiff's claim of tortious interference and conspiracy have not been pled in this case and the Court makes no findings relating to these issues.

**E.      Affirmative Defense of Laches**

18.      To prevail against a laches defense, SafeWorks need not prove that it searched in every possible way to find potential infringers.  SafeWorks need only show that it took action once it knew or should have known of the infringement.  <u>See</u> <u>Tillamook Country Smoker, Inc. v. Tillamook County Creamery Ass'n.</u>, 465 F.3d 1102, 1108 (9th Cir. 2006). Defendants have failed to prove that SafeWorks knew or should have known of the infringement prior to the spring of 2008.  SafeWorks acted to halt the infringement, filing suit only two months after receiving notice of defendants' infringement.  Thus, the defense of laches is inapplicable to this matter.

**F.      Relief Awarded to SafeWorks**

<u>Injunctive Relief</u>

19.      "Injunctive relief is the remedy of choice for trademark and unfair competition cases, since there is no adequate remedy at law for the injury caused by a defendant's continuing infringement."  <u>Century 21 Real Estate Corp. v. Sandlin</u>, 846 F.2d 1175, 1180 (9th Cir. 1988); 15 U.S.C. § 1116 (injunctive relief for violation of the Lanham Act 43(a) or (d)).

20.      SafeWorks is entitled to a permanent injunction against all defendants under the Lanham Act, prohibiting each defendant and their officers, agents, servants, employees and attorneys, and those persons acting in concert or participation with them who receive

actual notice of the permanent injunction by personal service or otherwise, from using the term "spiderlift,"  in any way, including as a domain name.

21.    Each defendant and each of its officers, agents, servants, employees, attorneys, dealers, distributors, and subdealers, and any other affiliate or person acting in concert or participation with them shall hereby refrain from:  Using in connection with its activities, products or services the designation "spider" or "spiderlift," or any confusingly similar variations thereon, or any false or deceptive designation, representation or description of SPIDER® or of its products, services or activities, whether by words, symbols, statements, or internet domain names.

22.    All defendants are hereby ordered within 20 days:

      i.    To take all necessary steps to cease using the domain name www.spiderlifts.com;

      ii.    To destroy or modify all promotional or other materials, including its website, which use the infringing Mark "spiderlift" or any variation thereof; and

      iii.    To abandon its federal trademark application for "The Spiderlift Company."

23.    Defendants shall make reasonable efforts to withdraw from the stream of commerce all advertising materials and products containing the term "spiderlift."  Defendants are directed to file with this Court and serve on plaintiff within thirty (30) days from the date of these Findings of Fact and Conclusions of Law, a report in writing, under oath, setting forth in detail the manner and form in which defendants and their affiliates, officers, agents, servants, employees, attorneys, distributors, licensees, and all other persons in active concert or participation with any of them have complied.

24.    SafeWorks shall file a proposed permanent injunction within twenty (20) days from this date, and note the matter on the Court's calendar for the second Friday after filing.

FINDINGS OF FACT AND
CONCLUSIONS OF LAW - 20

1  Any objection to the form of the permanent injunction shall be filed by defendants by the
2  noting date.

3  **Damages**

4      25.    The Lanham Act provides for the recovery of a defendant's profits as a
5  measure of damages.  See 15 U.S.C. § 1117(a).  A plaintiff does not need to show actual
6  damage to obtain an award reflecting the infringer's profits.  Lindy Pen Co. v. Bic Pen Corp.,
7  982 F.2d 1400, 1410-11 (9th Cir. 1993).  Because proof of actual damage is often difficult,
8  a court may award damages based solely on defendant's profits on a theory of unjust
9  enrichment.  Lindy Pen, 982 F.2d at 1407 (citing 2 J. Thomas McCarthy, Trademarks and
10  Unfair Competition, §30:27, at 511 (2d ed. 1984).  A company's loss of the ability to control
11  its reputation for quality is, itself, a legally cognizable form of injury.  Adidas America, Inc.
12  v. Payless Shoesource, Inc., 2008 WL 4279812, *8 (D. Or. 2008).

13      26.    As damages for defendants' infringement, SafeWorks is awarded defendants'
14  net profits during the period of infringement; August 2004 through December 31, 2009, in
15  the amount of **$56,882** against defendants Teupen America, LLC, and Extreme Access
16  Solutions, Inc.  This amount is the total of net profits shown in Findings of Fact Nos. 58
17  and 59.

18  **Attorneys' Fees and Costs**

19      27.    The Lanham Act permits an award of reasonable attorneys' fees to the
20  prevailing plaintiff for violations of 15 U.S.C. § 1125(a) and 1125(d) in exceptional cases.
21  "Exceptional" is defined as "malicious, fraudulent, deliberate or willful."  Gracie v. Gracie,
22  217 F.3d 1060, 1068 (9th Cir. 2000); see also Lindy Pen Co. v. Bic Pen Corp., 982 F.2d
23  1400, 1409 (9th Cir. 1993).

24      28.    Defendants' deliberate and willful acts include, without limitation, deliberate
25  indifference to: (1) the constructive notice conferred by the long time registration of the
26  SPIDER® Marks, (2) the repeated warnings sent by SafeWorks, and (3) defendants'

FINDINGS OF FACT AND
CONCLUSIONS OF LAW - 21

agreement to stop infringing, which agreement they then breached.  Such conduct renders this an "exceptional case."

29.     SafeWorks is also entitled to its reasonable attorneys' fees and costs against defendants Teupen America, LLC and Extreme Access Solutions, Inc. because this is an "exceptional case" under 15 U.S.C. § 1117(a).

30.     SafeWorks shall have twenty (20) days from the date hereof to move for an assessment of reasonable attorneys' fees.  SafeWorks may submit a motion for costs as provided for under CR 54(d)(1).

DATED this 1st day of June, 2010.


Thomas S. Zilly
United States District Judge

FINDINGS OF FACT AND
CONCLUSIONS OF LAW - 22